Jim PYLE *v.* STATE of Arkansas

CR 92-777                                            862 S.W.2d 823

Supreme Court of Arkansas
Opinion delivered September 20, 1993
[Rehearing denied November 1, 1993.]

*McDaniel & Wells, P.A.*, by: *Bobby McDaniel*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clementine Infante*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This is an appeal by Jim Pyle from a judgment of conviction on counts of possession and delivery of a controlled substance and possession of drug paraphernalia. Cumulative sentences of eighty years imprisonment were imposed. Our jurisdiction attaches pursuant to Rule 29(1)(b).

On June 1, 1990, Pyle's residence at 803 Lawrence Drive in Jonesboro was searched pursuant to a search warrant executed on

May 31. Cocaine, marijuana, cash, and drug paraphernalia were seized. The events leading to the application for the warrant began on May 24 when Donna Bogard, a Drug Task Force Officer, and a confidential informant met with a man named Robert Atkerson to buy drugs. They met near Pyle's home. Bogard and the informant wore concealed microphones. When Bogard gave Atkerson money to buy the drugs, she asked who the dealer was. When Atkerson refused to say, the informant suggested, "We'll just say J.P." Atkerson said, "That'll work. The Boss. Sometimes I call him Bruce." Bogard watched Atkerson drive in the direction of Pyle's home and turn into a driveway at the end of the street. The residence is at the west end of a dead end street. Bogard did not see whether Atkerson actually went into the Pyle residence but did see him turn into the driveway. Atkerson later returned with drugs, which Bogard bought. No attempt was made to get a search warrant at this time.

On May 30 and 31 the confidential informant made three phone calls to Pyle. Police officers were in the room with the informant and recorded the calls. The informant told Pyle he needed "that product." There was no agreement made to sell anything, only a discussion in which Pyle discouraged the informant from coming to his house. Pyle indicated the informant should call back later to see if Atkerson had returned.

At 5:10 p.m. on May 31 Bogard again purchased cocaine from Atkerson. After she gave Atkerson the money, he said he had to hurry and get the money back to his source. Three minutes later, two other police officers, Officer Thomas and Officer Grigsby, who were conducting a surveillance near Pyle's house, saw Atkerson approach the house and enter through the garage. The officers took pictures of Atkerson and another man outside the house.

On May 31 Officer Thomas applied for a search warrant. His affidavit generally recounted these events, stating that Atkerson had sold drugs to Bogard on May 24 and 31, had identified his source as "J.P." both times, and that the informant knew "J.P." to be Jim Pyle, Jr. Further, that Bogard was able to determine that Atkerson went to Pyle's house on the 24th and that Thomas and Grigsby saw him enter the house soon after he sold the drugs to Bogard on the 31st. It stated the officers had observed Atkerson

speaking to a "person known to be Jim Pyle" in front of Pyle's house.

Officer Thomas testified at the probable cause hearing that Atkerson had said on the 24th that he was "going to J.P.'s house." He testified that Atkerson told Bogard on the 31st that he was taking the drug money "back to J.P." Bogard also testified that Atkerson had referred to his source as "J.P."

Jim Pyle moved to suppress the evidence seized under the warrant. He alleged the affidavit and testimony before the magistrate contained false statements and material omissions. His motion was denied, the evidence was admitted and at trial the jury convicted Pyle on all counts. On appeal, he brings six points for reversal.

## I

Jim Pyle argues the search warrant was obtained by an affidavit and testimony containing "knowing and reckless false, material statements and structured, material omissions." He contends his Fourth Amendment rights were violated and the evidence seized pursuant to the warrant should be suppressed.

The established standard of review in such cases requires that we consider the totality of the circumstances to determine if the trial court's decision was clearly against the preponderance of the evidence. *Coleman* v. *State*, 308 Ark. 631, 826 S.W.2d 273 (1992); *State* v. *Blevins*, 304 Ark. 388, 802 S.W.2d 465 (1991). We consider the facts in the light most favorable to the appellee. *Ryan* v. *State*, 303 Ark. 595, 601, 798 S.W.2d 679, 683 (1990).

The general rule for the application of the Fourth Amendment exclusionary rule to evidence seized under an invalid warrant is set out in *United States* v. *Leon*, 468 U.S. 897 (1984). In *Leon*, the Court fashioned a good faith exception to the requirement of a valid warrant, that suppression of evidence would not be appropriate when a law enforcement officer acted in good faith reliance on a facially valid warrant. *Id.* at 922. The Court also stated that the good faith exception would not apply when the issuing magistrate is misled by an affiant who either knows the information given is false or has acted in reckless disregard of its truth or falsity. *Id.* at 923.

■ *Franks* v. *Delaware* provides the test for determining whether a warrant alleged to have such defects falls outside the *Leon* good faith exception. 438 U.S. 154 (1978). Under *Franks*, a warrant should be invalidated if a defendant shows by a preponderance of the evidence that: (1) the affidavit contained a false statement which was made *knowingly, intentionally, or recklessly* by the affiant and (2) the false statement was necessary to a finding of probable cause. *Id.* at 155-56. If those findings are made, the false material is excised and the remainder of the affidavit is examined to determine if probable cause exists. If the truthful portion of the affidavit makes a sufficient showing of probable cause, the warrant will *not* be invalidated. *Id.* We examine Pyle's arguments in light of *Franks*.

■ First, Pyle argues that Officer Thomas falsely stated at the probable cause hearing that at the first drug transaction on May 24 Atkerson identified his source as "J.P.," when in fact it was the confidential informant who used the term "J.P." in referring to the source. Thomas conceded at the suppression hearing that Atkerson had not directly referred to his source as "J.P." and had merely confirmed the reference by responding, "That'll work." Even so, we find no basis for a conclusion that Thomas had any intent to mislead the magistrate. Whether it was the informant or Atkerson who first referred to the source as "J.P." matters little, so long as Atkerson, the go-between, agreed that "J.P." was an appropriate reference. It was Atkerson who knew the identity of his supplier and by confirming that cognomen, he effectively identified his source as "J.P.". We find no indication that Thomas doubted the essential accuracy of his statements to the magistrate. In *Franks* v. *Delaware*, the United States Supreme Court stated that "every fact in an affidavit [need not necessarily be] correct . . . [but must be] truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true." 438 U.S. at 165-66.

Pyle also complains that Thomas told the magistrate that Atkerson again named his source as "J.P." at the second transaction on May 31. Before the magistrate Thomas testified that Atkerson advised Investigator Bogard that "he had to take the money back to 'J.P.,' " when in fact Atkerson said only that he had to take the money back to "his source". But we are not persuaded that this inaccuracy rises to the level of a knowing or

reckless falsehood as defined in *Franks* and *Leon.* The trial court, viewing these events as a whole, could accept Thomas's statement as a reasonable inference. Atkerson had agreed on May 24 that his source could be called "J.P." and told Bogard on May 31 that he had to take the money back to his source. There were circumstances indicating the same supplier was involved in both transactions and on both occasions Atkerson was observed going toward or into Pyle's house. Also, the record shows that Bogard had been privy to some undercover phone calls to Pyle which connected Pyle with Atkerson. In light of these circumstances, Thomas's perception of these events was not unreasonable, and the trial court concluded that his statement, although technically inaccurate, was not made with an intent to deceive.

Officer Thomas also told the magistrate that the informant knew "J.P." to be Jim Pyle. Pyle asserts there is no specific statement or testimony in the record where the confidential informant directly states that "J.P." means appellant Jim Pyle. The state cites a conversation between the informant and Investigator Bogard where the informant refers to J.P., and then gives Bogard directions to Pyle's residence. The state also refers to a taped conversation between the informant and Pyle. Again, the trial court could reasonably infer that Thomas's testimony was based on his knowledge of these transactions, and not the result of an intent to deceive the magistrate.

Next, Pyle labels as false Officer Thomas's statements that he saw Pyle talking to Atkerson at the Pyle residence after the drug transaction on May 31 and took photographs of the two. At the suppression hearing Thomas acknowledged this mistake, explaining that when he identified Pyle he was relying on the knowledge of Officer Grigsby, who was conducting the surveillance with him on May 31. The state argues that "this is the type of hearsay contemplated by *Franks* v. *Delaware.*" The Court recognized in *Franks* that an affidavit may be based upon hearsay and reiterated its reluctance to extend the rule of exclusion beyond "those instances of deliberate misstatements and those of reckless disregard." 438 U.S. at 167, 170. The trial court obviously reasoned that in relying on Investigator Grigsby, Thomas was not making a deliberate or reckless misstatement.

As to the photographs, Pyle offers no evidence that

Thomas knew at the time of the probable cause hearing that Pyle was not the man photographed or that Thomas had reason to doubt the identity of the man in the picture at the time he testified before the magistrate. Under *Franks*, the burden of showing that an affiant knowingly and recklessly included a false statement is upon the challenger of the affidavit. *Franks*, 438 U.S. at 171. While it has been shown that a false statement was made, Pyle fails to meet the burden of showing that Thomas acted knowingly or recklessly.

Under *Franks*, if false or erroneous statements meet the standard of knowing deception or reckless disregard, the next step is to extract such statements, examine the remainder, and determine if probable cause exists. 438 U.S. at 156. What remains in this case is the two drug transactions in the same locale, Atkerson's affirmance of "J.P." as his source, his statement at the second transaction that he was taking the money back to his source, and Thomas's observation of Atkerson entering Pyle's house minutes later. These factors readily equate with probable cause. *See Illinois* v. *Rodriguez*, 119 S. Ct. 2793, 2799 (1990).

Additionally, Pyle cites several "material and significant omissions" which should have been disclosed to the magistrate at the probable cause hearing. He insists the magistrate should have been told that Atkerson used the name "Bruce" in referring to the source and that Pyle refused to sell drugs to the confidential informant in the taped conversations. We do not regard these as material omissions. Whether Atkerson chose to refer to his source as "J.P.", or "Boss" or "Bruce" hardly matters, so long as the same individual is being referred to.

Pyle relies on *Harris* v. *State*, in which a number of technical errors, taken together, were found sufficient to invalidate a warrant. 264 Ark. 391, 572 S.W.2d 389 (1978). The errors in *Harris* were apparent on the face of the warrant and the trial judge, in denying the motion to suppress, conceded that the errors amounted to a total disregard for the rules of criminal procedure. *See Harris* at 392, 572 S.W.2d at 390. Pyle does not allege that these omissions violated any rules, nor does he show how their existence could be attributed to anything other than mere laxity. The omissions involve factors that might be argued at trial, *e.g.*

such things as Pyle's refusal to sell drugs on other occasions and the presence of other people at his home on the date of the first drug sale. Given the circumstances as a whole, it was not implausible for the trial court to conclude that the omissions were not significant or material in a probable cause context.

Neither *Franks* nor *Leon* specifically mentions omissions, but the standards they articulate require a knowing intent to deceive, or a reckless disregard of truth. Applying that standard, it would seem that matters omitted must be material circumstances which contradict or dispel the incriminating factors in the affidavit. *Leon* states that the good faith standard does not preclude inquiry into the knowing or reckless falsity of the affidavit itself. Therefore, such omissions would need to render what is in the affidavit effectively false because of their nondisclosure. *See Franks*, 462 U.S. at 171. Such things as refusal to sell cocaine on other occasions, failure to return phone calls, and the presence of other people at the house, do not convert the factors discussed above into deception by negation.

We conclude that the alleged misstatements do not meet the test provided by *Franks* to invalidate the warrant, and, even if it were otherwise, probable cause is present in the remainder of the warrant.

## II

Jim Pyle contends the Court allowed the state to impeach a defense witness by presenting extrinsic evidence on a collateral matter. On cross-examination, the prosecutor asked Ms. Bysshe Stovall, Pyle's live-in girlfriend, about a vial and a straw with powdery residue found in her purse. She denied knowing these items were there, explaining that she had lent her purse to a friend. The state called a police officer to testify that he had taken the articles from her purse during the search. Pyle cites the well-established rule of law that a witness may not be impeached on a collateral matter by using extrinsic evidence. *See Sutton* v. *State*, 311 Ark. 435, 442, 844 S.W.2d 350 (1993); *Nard* v. *State*, 304 Ark. 159, 801 S.W.2d 634 (1990). Thus, the question is whether the evidence meets the definition of "collateral."

Our cases provide definitions of noncollateral matters

relevant to this analysis. A matter is not collateral if the cross-examining party would be entitled to prove the issue as part of the case in chief, or if the evidence is relevant to show bias, knowledge, or interest. *See Kellensworth* v. *State,* 275 Ark. 252, 255, 631 S.W.2d 1, 2 (1982). Wigmore states that a matter is not collateral if it can be shown for a purpose independent of the contradiction. 3A *Wigmore* § 1003 at 961. Pyle was charged with possession of drug paraphernalia. To prove this charge the state may show constructive possession, in that illegal items were found in a place subject to the accused's joint control with another. *See Parette* v. *State,* 301 Ark. 607, 786 S.W.2d 817 (1990). The paraphernalia was seized during the search of the residence shared by Pyle and his girlfriend. He contends that neither of them was charged with possession of this particular paraphernalia. However, Count VI of the information alleges possession of paraphernalia, including vials. The evidence is independently provable under the above definition and is not collateral.

This evidence could also be probative of knowledge by the witness. Ark. R. Evid. 404(b) (1992). Wigmore defines knowledge as what is said by the witness concerning the main event to which he or she is testifying. 3A *Wigmore* § 1005 at 972. Ms. Stovall testified that she did not know that drugs or paraphernalia were on the premises. Confronting her with paraphernalia found in her purse would be probative of her awareness that it was there.

## III

Pyle next contends his Sixth Amendment rights were violated when the court allowed the state to play undercover tapes containing statements by Robert Atkerson without calling Atkerson as a witness. Three cases dealing with the general rule that a defendant has a right to cross-examine his accusers are cited. *See Watson* v. *State,* 308 Ark. 444, 825 S.W.2d 569 (1992); *Bowden* v. *State,* 301 Ark. 303, 783 S.W.2d 842 (1990); *Cogburn* v. *State,* 292 Ark. 564, 723 S.W.2d 807 (1987). These cases do not specifically address the issue presented and we assume appellant is directing us to the policy underlying the hearsay rule. The state responds that because the taped out-of-court statement is that of a co-conspirator, it is not hearsay. *See*

Ark. R. Evid. 801(d)(2)(v).

Pyle was charged with conspiracy to deliver cocaine. Under our case law, a co-conspirator's testimony can be deemed competent even without such a charge, but the alleged co-conspirator must be connected to the conspiracy by evidence independent of the statement. *See Smithey v. State,* 269 Ark. 538, 602 S.W.2d 676 (1980); *Patterson v. State,* 267 Ark. 436, 591 S.W.2d 356 (1979). Because such statements derive exemption from the hearsay rule under the definition of "admission by a party opponent," they must in effect be vicarious admissions. *See* Ark. R. Evid. 801 (d)(1)(v); *Patterson,* 267 Ark. at 441, 591 S.W.2d at 360. We have held that, where an actual criminal act is performed by an alleged accomplice, the accomplice's statements made during the transactions are admissible as a statement of a co-conspirator. *Foxworth v. State,* 263 Ark. 549, 566 S.W.2d 151 (1978). It is undisputed that Atkerson sold cocaine to Officer Bogard on May 24 and May 31, and the taped conversations were part of these transactions. Nor were the statements the only link between Atkerson and the conspiracy. Pyle, after all, was the one who sold the cocaine. Atkerson pled guilty. The issue was whether Pyle was the source. Given these facts, the statements fall within the co-conspirator category.

Further, the trial court followed the procedure set out in *United States v. Bell,* 573 F.2d 1040 (8th Cir. 1978), and adopted by this court. *See Patterson,* 267 Ark. at 443, 591 S.W.2d 360 (1979). The trial court first heard the tapes and testimony, conditionally admitted the evidence, and advised the jury before denying the defendant's motion to strike. This is exactly the procedure set out in *Patterson. Id.* at 443, 591 S.W.2d at 360.

Pyle also makes a sweeping contention that AMCI 201 is unconstitutional under the due process clause with no explanation as to how due process is violated. We find no merit in the argument. AMCI 201 tells the jury it must find the existence of a conspiracy beyond a reasonable doubt before it can consider any statement allegedly made in furtherance of a conspiracy. The Commentary to AMCI 201 explains that a trial judge has the discretion to admit evidence which is dependent upon a condition of fact, and that it is "better practice" to give a limiting instruction as the evidence is received." *Arkansas Model Crimi-*

178

*nal Instructions* 201 (1979) (commentary page 11). Pyle maintains that AMCI 201 allows a jury to decide whether evidence is admissible. We disagree. AMCI 201 facilitates the procedure set out in *United States* v. *Bell* by telling the jury in effect what is required by *United States* v. *Bell.* This is essentially stated in dicta in *Patterson* v. *State*, which was decided before AMCI 201 was adopted. *See* 267 Ark. 443, 591 S.W.2d at 360. In *Patterson*, we said the same thing as the commentary to AMCI 201—the better practice is to give this instruction in handling the testimony of alleged co-conspirators.

Another argument is that the state should not have used Atkerson's out-of-court statements without calling him as its witness. Pyle cites *Roberts* v. *State*, 278 Ark. 550, 648 S.W.2d 44 (1983). In *Roberts*, the state's witness had made a prior inconsistent statement that was plainly hearsay. The state was allowed to present this statement through another witness, and on appeal the tactic was seen as an improper attempt to get before the jury evidence that was otherwise inadmissible. *Roberts*, 278 Ark. at 552, 648 S.W.2d at 46. However, if Atkerson's statements are viewed as a statement of a co-conspirator, and not as a prior inconsistent statement, they are not hearsay and are otherwise admissible. We regard the cases as distinguishable.

IV

Pyle next contends the trial court abused its discretion in allowing a rebuttal witness (Gary Heflin) to show prior bad acts, to prove an element which should have been presented in the case-in-chief, and to violate pretrial discovery because the witness was not disclosed to the defense prior to trial. The answer lies in whether Heflin was properly a rebuttal witness. If so, the state was not required to disclose him before trial. *Asher* v. *State*, 303 Ark. 202, 795 S.W.2d 350 (1990); *Weaver* v. *State*, 290 Ark. 556, 720 S.W.2d 905 (1986). Also, the scope of his testimony in that event is given wide latitude, and it will not be restricted merely because it could have been presented on direct. *Birchett* v. *State*, 289 Ark. 16, 708 S.W.2d 625 (1986).

The definition of rebuttal evidence found in *Birchett* v. *State* is instructive. We wrote that genuine rebuttal evidence "consists of evidence offered in reply to new matters." *Id.* at 20. We said that evidence can still be categorized as genuine

rebuttal evidence even if it overlaps with the evidence in chief. However, the evidence must be responsive to that which is presented by the defense. *Id.* at 19. Here, Pyle testified he had no prior knowledge of cocaine being in his house and that he had never sold drugs. Heflin testified that he had traded auto parts with Pyle in exchange for cocaine in the past and had used cocaine with Pyle. Since the defense was lack of knowledge, Heflin's testimony was proper both as rebuttal and as evidence of prior acts for the purpose of showing knowledge under Ark. R. Evid. 404(b).

## V

Jim Pyle contends because the evidence is insufficient to convict him a directed verdict should have been granted. In reviewing the substantiality of the evidence, we examine the evidence in the light most favorable to the appellee, and sustain the verdict if the evidence is substantial. *Hooks* v. *State*, 303 Ark. 236, 795 S.W.2d 56 (1990). Evidence is substantial if it is strong enough to compel a conclusion either way. *Moore* v. *State*, 297 Ark. 296, 761 S.W.2d 894 (1988). Pyle merely recounts the testimony offered in his defense, rather than addressing the substantiality of the state's evidence. We find ample evidence which, if believed, would prove the elements of the case. Pyle was charged with delivery and possession of cocaine, possession of drug paraphernalia, and possession of marijuana. To convict him of delivery, the state had to prove that he actually or constructively transferred cocaine for value to another person. Ark. Code Ann. § 5-64-101(f) (Supp. 1991). The state's proof included taped conversations between Pyle and the confidential informant in which Atkerson and the "product" were discussed. Atkerson was observed going into Pyle's house immediately after Atkerson sold cocaine to Officer Bogard and had told them he was taking the money back to his source. When the house was searched, drugs and paraphernalia were found, and then marked money for the drug buy was found on Pyle. Pyle does not attack the sufficiency of this evidence, he merely prefers his own. Looking at the evidence in the light most favorable to appellee, we are satisfied it was more than adequate.

To convict one of possession of cocaine, marijuana, and paraphernalia, the state had to show that the defendant

exercised control or dominion over it. *Plotts* v. *State*, 297 Ark. 66, 759 S.W.2d 793 (1988). It is undisputed that no drugs or paraphernalia were found on Pyle's person. However, our cases have held that constructive possession is sufficient- that is, when illegal items are found in an area subject to a defendant's control. *Id.* The state established that drugs and paraphernalia were found in Pyle's home. His witnesses testified that these items belonged to other people and that others had free run of the house. When contraband is found in a place under a defendant's dominion and control a jury may infer constructive possession, but if joint control is established, proof of knowledge of the contraband is required. *See Cary* v. *State*, 259 Ark. 510, 517, 534 S.W.2d 230 (1976); *Parette* v. *State*, 301 Ark. 607, 616, 786 S.W.2d 817 (1990). Pyle owned and lived in the house where the items were found. There was proof from which the jury could find that Pyle had dominion and control over the house, and to infer constructive possession.

Since Pyle shared the house with Ms. Stovall, a showing of knowledge is required under our cases. *See Plotts*, 297 Ark. 72, 759 S.W.2d at 794 (1988). Pyle testified he did not know the items were in his house. However, given the fact that drugs and paraphernalia were found in the bathroom of the master bedroom, that the phone calls discussing Atkerson and "that product" could be interpreted as implicating his involvement, a jury could reach this conclusion without speculation or conjecture. *Hooks* v. *State*, 303 Ark. 236, 795 S.W.2d 56 (1990). Evidence is substantial if a reasonable inference can be made from the facts, when viewed in the light most favorable to the state. *Cary*, 259 Ark. at 510, 534 S.W.2d at 230.

## VI

The final argument is that $4,000.00 in cash seized at Pyle's home should have been suppressed as the fruit of an illegal search, and was irrelevant to the case. The legality of the search warrant is discussed at length under Point I and warrants no further attention here. The remaining questions are (1) whether the trial court abused its discretion in admitting this proof over an A.R.E. 401 relevance objection or (2) in balancing the probative value versus prejudice under A.R.E. 403. Our cases reflect that the trial court's discretion in determining relevance is broad, and

subject to reversal only if such discretion is abused. *Qualls* v. *State*, 306 Ark. 283, 812 S.W.2d 681 (1991); *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990); *White* v. *Clark Equipment Co.*, 262 Ark. 158, 553 S.W.2d 280 (1977). In *Walker*, we stated that evidence need only have "*any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* at 221, S.W.2d. In *Qualls*, we held that a picture of the defendant with large sums of money in a room where he had conducted drug transactions was relevant to show that he sold drugs. *Id.* at 285, 812 S.W.2d at 683-83. Given the broad discretion of the trial court and the nature of the charges, we think *Qualls* is controlling and the trial court's discretion was not abused.

For the reasons stated, the judgment is affirmed.