Darrel Patrick FOUSE *v.* STATE of Arkansas

CR 98-928                                989 S.W.2d 146

Supreme Court of Arkansas
Opinion delivered March 18, 1999

*Hampton, Larkowski & Coleman,* by: *Mark F. Hampton* and *Patrick J. Benca,* Law Student Admitted to Practice Pursuant to Rule V(E)(1)(6) of the Rules Governing Admission to the Bar of the Arkansas Supreme Court, for appellant.

*Winston Bryant,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. This case comes to this court on a conditional plea of guilty pursuant to Ark. R. Crim. P. 24.3(b). Appellant Darrell Patrick Fouse contends that the trial court erred in finding that the affidavit for search warrant stated sufficient facts to justify a nighttime search and further erred in ruling that the good-faith exception under *United States v. Leon,* 468 U.S. 897 (1984), salvaged the search in this case. We agree that the trial court erred, and we reverse and remand the case for an order consistent with this opinion.

On November 29, 1997, the McRae Police Department received reports from concerned citizens of a strange smell coming from a shed near Fouse's residence which is a mobile home. Two police officers from the McRae Police Department went to Fouse's property and confirmed the smell of a chemical odor. On December 22, 1997, the McRae Police Department contacted Detective David Oser, who was assigned to the 17th East Judicial District Drug Task Force, after reports that the chemical odor could again be detected on Fouse's property. Detective Oser and

Arkansas State Trooper Roger Ahlf went to Fouse's residence and smelled ether coming from the mobile home or around it. Detective Oser learned from Trooper Ahlf that in 1988 and 1989, Fouse had been allegedly associated in the distribution of methamphetamine with persons who had been convicted in federal court of methamphetamine crimes. The detective also learned that Fouse had been convicted of delivery of a controlled substance in 1987.

Based on this information and his knowledge of the methamphetamine cooking process, Detective Oser presented an Affidavit for Search Warrant to the municipal judge, who issued a search warrant for Fouse's premises. The judge allowed execution of the warrant to take place at any time and checked the box on the search warrant stating that the objects to be seized were in danger of imminent removal as his reason for doing so. At 12:20 a.m. on December 23, 1997, police officers conducted the search and found evidence of an active methamphetamine lab, drug paraphernalia, communication equipment, methamphetamine on Fouse's person, and a firearm.

On March 6, 1998, Fouse filed a Motion to Suppress the evidence seized and asserted that the search warrant failed to establish probable cause for a nighttime search, that a nighttime search was not authorized in the warrant, and that the smell of ether does not constitute probable cause to support the issuance of a search warrant. A hearing on the motion was held, and on May 11, 1998, the trial court granted Fouse's motion to suppress, finding that the smell of ether, a legal substance, without other facts, did not provide sufficient probable cause for the issuance of a search warrant. The following day on May 12, 1998, the trial court set aside his first order and found that the good-faith exception established by the United States Supreme Court in *United States v. Leon, supra,* applied. Suppression of the evidence, accordingly, was denied. On May 14, 1998, Fouse entered his conditional plea of guilty to manufacture of a controlled substance, felon in possession of a firearm, and use of a communication facility for drug purposes, subject to the decision on the suppression issue in this appeal.

### I. Probable Cause for Nighttime Search

Fouse initially argues that there was nothing in Detective Oser's affidavit to show that Oser had information that Fouse possessed methamphetamine on his property or that the methamphetamine was in danger of imminent removal. Fouse further contends that the only language in the Oser affidavit regarding imminent removal of drugs was a conclusory statement to that effect, and that conclusory statements cannot support the issuance of a nighttime search warrant.

We recently described our standard of review for a trial court's decision on a motion to suppress:

> In reviewing a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances; we view the evidence in the light most favorable to the appellee, and we reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997), *cert. denied*, 117 S. Ct. 2411 (1997). We apply the totality-of-the-circumstances analysis when determining whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284·(1996); *State v. Mosley*, 313 Ark. 616, 856 S.W.2d 623 (1993).

*Langford v. State*, 332 Ark. 54, 59-60, 962 S.W.2d 358, 361 (1998).

Rule 13.1(b) of the Arkansas Rules of Criminal Procedure provides the requirements for a valid application for a search warrant and the totality-of-the-circumstances approach to be taken in determining whether reasonable cause exists for the search. Nighttime searches, however, are treated differently under our criminal rules and require that the judicial officer find reasonable cause that at least one of three listed exigent circumstances exists:

> Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:

(i) the place to be searched is difficult of speedy access; or

(ii) the objects to be seized are in danger of imminent removal; or

(iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy; the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

Ark. R. Crim. P. 13.2(c).

This court has invalidated nighttime search warrants on several occasions when facts supporting one or more exigent circumstances have been found wanting. *See, e.g., Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993); *Garner v. State*, 307 Ark. 353, 820 S.W.2d 446 (1991); *State v. Martinez*, 306 Ark. 353, 811 S.W.2d 319 (1991); *Hall v. State*, 302 Ark. 341, 789 S.W.2d 456 (1990); *State v. Broadway*, 269 Ark. 215, 599 S.W.2d 721 (1980). In *Richardson v. State, supra*, this court held that a nighttime search warrant based on a conclusory statement in the police detectives' affidavit that pornographic photographs and other evidence were in danger of being removed was issued in error. In holding that the police detectives' language about removal was conclusory, we said: "We have consistently held that a factual basis supporting a nighttime search is required as a prerequisite to the issuance of a warrant authorizing a nighttime search. . . . We have held conclusory language . . . unsupported by facts is insufficient to justify a nighttime search. . . . Given that there was nothing to give reasonable cause to believe the items specified in the search warrant would be disposed of, removed, or hidden before the next morning, issuance of the nighttime search warrant was in error." *Id.* at 518-519, 863 S.W.2d at 576.

Likewise, in *Garner v. State, supra*, the police officers' affidavit in support of the search warrant for drugs stated that the dwelling to be searched was located 12.5 miles from the courthouse; a person arrested for possession of drugs had stated that he bought the drugs from the appellant; the sheriff's office had received information in the past sixty days that several purchases of marijuana had

been made from the appellant; and a person arrested for possession of marijuana stated that he had observed a quantity of marijuana on the appellant's property. The judge issued a nighttime search warrant and checked two boxes on the warrant: "the place to be searched is difficult of speedy access" and "the warrant can only be safely or successfully executed at night time or under circumstances the occurrence of which is difficult to predict with accuracy." In reversing the trial court's denial of appellant's motion to suppress, we said: "[C]onclusory statements [do] not suffice to establish the requisite factual basis for reasonable cause. . . . We, therefore, hold that the two statements 'checked' were conclusory and unsupported by sufficient facts and, accordingly, did not establish reasonable cause for a nighttime search. Without sufficient factual premises, it was impossible for the municipal judge to make an intelligent finding of reasonable cause to justify a nighttime search." *Id.* at 357-358, 820 S.W.2d at 449.

We have also upheld the issuance and execution of a nighttime search warrant, when facts evidencing an exigent circumstance were present. *See, e.g., Langford v. State, supra; Owens v. State,* 325 Ark. 110, 926 S.W.2d 650 (1996). In *Langford v. State,* for example, the affidavit given in support of the nighttime search warrant contained four exigent circumstances: (1) there were drugs currently located at the appellant's residence that were packaged and maintained in a manner that their destruction or removal could be easily accomplished; (2) the appellant had threatened one of the informants in the case with a weapon, and was believed to be armed and dangerous, making the element of surprise inherent with a nighttime search essential for the safety of the officers executing the warrant; (3) the affiant had information that the appellant would be leaving on September 29, 1993, thus giving rise to the belief that the drugs would be removed; and (4) the residence was located on a hill overlooking the road, making speedy access impossible. We held that these statements contained in the affidavit presented a sufficient factual basis to support the trial court's decision to deny suppression of the evidence seized in the nighttime search.

Similarly, in *Owens v. State, supra,* the affidavit in support of the issuance of a nighttime search warrant stated in part:

Access to the Dean Owens residence can be made only by a one lane dirt road which is filled with potholes, currently very muddy and the approach of vehicles can be observed from the residence. . . .

Informant information has revealed that Dean and Christie (Judy) Owens have been under the constant influence of methamphetamine for the past six (6) months and have because of this use exhibited characteristics consistent with a fear of being watched and approached by law enforcement authorities at their residence. Information addressed in Paragraph Four of this affidavit supports the possibility of automatic firearm(s) being in the possession of the occupants of the Dean Owens residence. Therefore, safe and speedy access to the Dean Owens residence by authorities can only be obtained under the cover of darkness and during an hour when it would be reasonable to believe that occupants of the residence would be less attentive to approaching officers. Speedy access is necessary both for the protection and safety of approaching officers as well as occupants of the residence and to ensure that objects to be seized are not destroyed or removed in that the residence is equipped with indoor plumbing which could easily facilitate the flushing or washing of methamphetamine out of the residence.

*Id.* at 117, 926 S.W.2d at 654. We affirmed the issuance of the nighttime search warrant based on the supporting exigent circumstances set out in the affidavit.

■ In the case before us, the portion of the affidavit prepared by Detective Oser that touched on imminent removal read as follows:

It has been my experience and I know that the process of manufacturing methamphetamine takes approximately four hours and that the chemicals used to manufacture methamphetamine are volatile and subject to explode or at the least cause a fire and can be a danger to surrounding houses in a residential setting such as this. There is also an emminent (*sic*) danger that the items and hardware used to manufacture methamphetamine may be moved or destroyed and the methamphetamine product may be transported and/or sold.

We view these comments by Detective Oser as conclusory and as falling more readily within the *Richardson/Garner* line of cases

where we held that factual support for a nighttime search had not been forthcoming. Nor can we agree with the trial court that a strong odor of ether detected at the Fouse residence at 9:00 p.m. on December 22, 1997, was a reasonable basis for concluding that methamphetamine was to be removed or sold or both within the next four hours and that a nighttime search was justified. We hold that not only was the search warrant deficient under Ark. R. Crim. P. 13.2(c) but that probable cause was lacking to justify a nighttime search.

## II.   Good-Faith Exception

We turn then to the issue of whether the police officers acted in good faith in executing this search warrant under *United States v. Leon, supra.* The test under *Leon* is not whether the police officers executing the search warrant subjectively believed they were complying with the law. Rather, the test to be applied under *Leon* is an objective standard of what reasonably well-trained police officers would believe is probable cause for a nighttime search. *See Richardson v. State, supra; Garner v. State, supra.* In *Garner,* after discussing the Supreme Court's decision in *United States v. Leon, supra,* we said:

> Our concern today is for the integrity of our Rules. If they are to have any meaning relative to nighttime searches, more must be shown the municipal judge than was offered in this case. Sub-jectively, the executing officers no doubt believed that they were complying with the law because they were using a printed form. Objectively, the affidavit and warrant were lacking in any indicia of a reasonable cause for a nighttime search other than a reitera-tion of the conclusory language in our Rules.

*Garner,* 307 Ark. at 359–360, 820 S.W.2d at 450. Because the objective standard was not met in *Garner v. State, supra,* we declined to uphold the nighttime search on the basis of the police officers' good faith.

What is required for establishing probable cause for a nighttime search is clear from Ark. R. Crim. P. 13.2(c) and the multiple decisions of this court requiring more than merely con-clusory statements. We have held that an objective standard of

good faith is not met when a police officer only presents suspicions regarding removal and the municipal judge only repeats the boilerplate language from Rule 13.2(c). *See Richardson v. State, supra; Garner v. State, supra.* Using an objective standard, we conclude that a reasonably well-trained police officer would not have believed that probable cause existed to conduct a nighttime search based on the smell of ether. We discern no reason to retreat from our prior decisions on this issue.

The trial court relied on the case of *United States v. Tate*, 795 F.2d 1487 (9th Cir. 1986), in determining that the smell of ether can provide a good-faith basis for a search. In *Tate*, police officers received an anonymous tip on July 12, 1980, that at least three men were parked in a van in front of a residence and that there was a strong smell of ether coming from that residence. The police officers went to the residence in question and confirmed the smell of ether. They then prepared affidavits and presented them to the magistrate for a search warrant. Meanwhile, at 3:30 a.m. on July 13, 1980, an agent with the California Bureau of Narcotics Enforcement went to the same residence. He also smelled ether and continued his surveillance of the residence. At 5:45 a.m., the agent noticed four or five men moving parcels to a station wagon. The men left in a car and the narcotics agent followed them. While following the men, the agent learned that a search warrant for the residence had been issued. Based on this information and his own surveillance, he stopped the station wagon. The agent detected a strong smell of ether and white powder on the men and arrested them. While the search of the men was taking place, other investigators were searching the residence.

The men who were charged filed motions to suppress the evidence seized in each of the searches. These motions were denied by the federal district court. In their first appeal, the Ninth Circuit Court of Appeals reversed the convictions, holding that "the smell of a noncontraband substance having a number of legitimate uses, standing alone does not establish probable cause to search a residence." *United States v. Tate*, 694 F.2d at 1221. The government appealed this decision to the Supreme Court. The Court reversed the Ninth Circuit and remanded for consideration of the issue in light of the *Leon* decision. *United States v. Tate*, 468 U.S. 1206 (1984). On subsequent appeal, the Ninth Circuit determined that under the *Leon* decision, "courts must determine

if no reasonably well-trained officer could have believed that there existed probable cause to search the residence." *Tate*, 795 F.2d at 1491. The court went on to hold that applying this test to this case, "a reasonably well trained police officer could, in good faith, conclude that there was probable cause to search the residence. Accordingly, although the search warrant was arguably invalid, the district court properly admitted the evidence seized from the residence against the defendants." *Id.*

The *Tate* case is distinguishable from the instant case on two bases. First, it does not appear that the search warrant at issue was for execution at night. At least, the Ninth Circuit fails to discuss the factors relating to a nighttime search or any of those exigent circumstances which pertain to the necessity for a search at night. Second, and this is a related point, the criminal rule at issue in *Tate* (it is unclear whether a federal rule or California rule was involved) apparently does not contain the same or similar exigent requirements as Ark. R. Crim. P. 13.2(c) for nighttime searches. Again, the exigencies of the situation were simply not discussed in the opinion. Because of this, the *Tate* case offers no guidance in connection with good-faith conduct and a nighttime search.

■ ■  In sum, we hold that the affidavit and resulting search warrant in the instant case did not contain sufficient facts to justify a nighttime search under Ark. R. Crim. P. 13.2(c). Moreover, even disregarding the defective affidavit and search warrant, we do not view the smell of ether as sufficient probable cause to justify a nighttime search. Using an objective standard, we do not see how a reasonably well-trained officer could have believed that this nighttime search passed muster under our criminal rules and caselaw. We have stated in the past: "The privacy of citizens in their homes, secure from nighttime intrusions, is a right of vast importance as attested not only by our Rules, but also by our state and federal constitutions." *State v. Garner*, 307 Ark. at 358-359, 820 S.W.2d at 449-450. We reverse and remand for entry of an order consistent with this opinion.

Reversed and remanded.