STATE of Arkansas *v.* Harold RUFUS

CR 98-1360 993 S.W.2d 490

Supreme Court of Arkansas
Opinion delivered July 1, 1999

*Mark Pryor*, Att'y Gen., by: *Kelly K. Hill*, Deputy Att'y Gen., Sr. Appellate Advocate for appellant.

*Randel Miller, P.A.*, by: *Randel Miller*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This is an interlocutory appeal. The State contends that the trial court erred when it suppressed evidence seized from Harold Rufus's home because the search warrant was based upon a fatally defective affidavit. We reverse and remand.

On January 7, 1998, Officer Bob Andrews of the Jonesboro Police Department arranged for a confidential informant ("CI") to make a drug purchase from the appellee, Mr. Harold Rufus. After the purchase, Officer Andrews returned to the Drug Task Force Office where he relayed the details of the buy to Officer Greg Baugh. Based on what Officer Andrews told him, Officer Baugh prepared an affidavit for a search warrant, which provided in relevant part that:

> THE UNDERSIGNED BEING DULY SWORN DEPOSES AND SAYS: THAT HE HAS *REASON TO BELIEVE* THAT; [crack cocaine, drug paraphernalia, records of drug transactions, and other drug-related evidence could be found at Harold Rufus's residence.]

> \* \* \*

> AND THAT THE FACTS TENDING TO ESTABLISH THE FOREGOING GROUNDS FOR ISSUANCE OF A

SEARCH WARRANT ARE AS FOLLOWS: WITHIN THE PAST 48 HOURS, A CI WAS MET, SEARCHED, AND GIVEN DTF BUY MONEY. THE CI STATED CRACK COCAINE COULD BE PURCHASED FROM HAROLD RUFUS AT HIS RESIDENCE AT 216 EASY. THE CI WAS FOLLOWED TO 216 EASY AND THE CI WAS OBSERVED ENTERED THE RESIDENCE. A SHORT TIME LATER, THE CI WAS OBSERVED EXITING THE RESIDENCE. THE CI WAS FOLLOWED TO A PREDETERMINED LOCATION AND MET AGAIN. THE CI HANDED OFFICERS A QUANTITY OF CRACK COCAINE THE CI SAID WAS PURCHASED WHILE INSIDE THE RESI-DENCE. THE CI HAS BEEN PROVED TO BE RELIABLE SEVERAL TIMES IN THE PAST BY PROVIDING ACCU-RATE INFORMATION TO OFFICERS OF THE SECOND JUDICIAL DRUG TASK FORCE.

Officer Baugh, who admittedly had no personal knowledge of the drug transaction, signed the affidavit. In contrast, Officer Andrews, the officer who actually observed the drug buy, reviewed the affidavit but did not sign it.

Later that day, Officer Baugh and Officer Andrews presented the affidavit to Judge Goodson. After administering an oath to both officers, Judge Goodson reviewed the affidavit and asked the officers if it was correct. Both officers responded in the affirmative, but they did not disclose to the judge that it was based on Officer Andrew's personal knowledge and not that of Officer Baugh. The judge signed the search warrant, which was executed on Mr. Rufus's home later that evening. Based on the evidence seized from his home, the State charged Mr. Rufus with posses-sion of cocaine with intent to deliver, simultaneous possession of drugs and a firearm, and being a felon in possession of a firearm.

After a hearing, the trial court granted Mr. Rufus's motion to suppress the evidence seized from his home because Officer Baugh, the affiant officer, had no personal knowledge of the drug transaction. Specifically, the judge said at the conclusion of the hearing that:

The Court doesn't have any problem, and wouldn't have had any problem in sustaining and upholding the search warrant had the

officer applying for the warrant indicated the source and nature of his information or had the officer that provided the information jointly signed the search warrant, but as it stands I am bound by the four corners of the warrant and the testimony of the affiant is that he had no personal knowledge upon which to base the search warrant and therefore the motion is granted.

\* \* \*

If the officer that provided the information, who apparently was also present before the magistrate that issued it, if he had signed the affidavit and acknowledged it, certainly it would have been valid, but you have put on testimony from the officer that prepared it . . . that he had no personal knowledge whatsoever, other than what had been told to him and part of what had been told to him was hearsay on hearsay, and it wasn't his personal information. The sad thing is, it would have been simple for the officer that provided the information to sign the search warrant and I am saying that the failure to do so was a fatal error.

Similarly, in its order of suppression, the trial court ruled that the affidavit:

failed to comply with the requirements of Rule 13.1(b) of the Arkansas Rules of Criminal Procedure. This finding is based upon the testimony that Officer Greg Baugh executed the Affidavit and that he was not possessed of first hand knowledge with respect to the contents of the Affidavit, but relied upon information supplied by Officer Bob Andrews. The affidavit does not comply with that portion of Rule 13.1(b) which requires that: "(I)f an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informants reliability and shall disclose, as far as practicable, the means by which the information was obtained."

Accordingly, the court ruled that the search warrant was invalid because the supporting affidavit failed to comply with Ark. R. Crim. P. 13.1(b).

In response, the State argued during the suppression hearing that the evidence seized from Mr. Rufus's home was admissible under the good-faith exception to the exclusionary rule enunciated in *United States v. Leon,* 468 U.S. 897 (1984). The trial court replied, that it was "aware of *Leon* and the Court does not believe

that there was any purposeful wrongdoing on the part of the officer but that it was merely a ministerial error, oversight, in signing the affidavit for a search warrant." Likewise, in its order of suppression the court rejected the State's *Leon* argument and ruled that "although there was no purposeful wrongdoing on the part of an officer, that failure to comply with the requirements of Rule 13.1(b) of the Arkansas Rules of Criminal Procedure requires the suppression of the evidence seized." Accordingly, the court suppressed all evidence seized from Mr. Rufus's home, and the State filed this interlocutory appeal pursuant to Ark. R. App. P.— Crim. 3(a).

When reviewing a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances and reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999); *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998). In making this determination, we view the evidence in the light most favorable to the appellee. *Fouse, supra; Langford, supra.*

### I. Arkansas Rule Criminal Procedure 13.1(b)

First, the State claims that the trial court erred when it ruled that the search warrant was invalid because the supporting affidavit failed to satisfy the requirements of Ark. R. Crim. P. 13.1(b), which provides that:

> The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. *If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained.* An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place.

> *Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.*

(Emphasis added.) Rule 13.1(b) incorporates the totality-of-the-circumstance test established in *Illinois v. Gates*, 462 U.S. 213 (1983), whereby:

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *State v. Mosley*, 313 Ark. 616, 856 S.W.2d 623 (1993); *Rainwater v. State*, 302 Ark. 492, 791 S.W.2d 688 (1990).

As we begin our Rule 13.1(b) analysis, it is important to note that the parties in this case do not question whether the affidavit sufficiently established the reliability and veracity of the confidential informant, or whether the information contained in the affidavit was sufficient to establish probable cause. In fact, the trial court clarified during the suppression hearing that the affidavit would have been sufficient had Officer Andrews either signed it or disclosed that the affidavit was based on his personal knowledge and not that of Officer Baugh.

 We hold that the trial court erred when it applied Rule 13.1(b) to this case because the rule does not deal with misleading information or omissions in an affidavit supporting a warrant, which is the issue presented by this case. Moreover, we have held that an affidavit does not have to contain facts establishing the veracity and reliability of nonconfidential informants such as police officers, public employees, victims, and other witnesses whose identity is known. *See, e.g., Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996) (citizen); *Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996) (police officer); *Haynes v. State*, 314 Ark. 354, 862 S.W.2d 275 (1993) (State Crime Lab employee). Hence,

the affidavit in this case could not have been fatally defective for failing to establish the veracity and reliability of either Officer Andrews or Officer Baugh.

The dissenting opinion contends that this case should be decided based on Rule 13.1(b). As explained above, Rule 13.1(b) provides that an affidavit may be based "in whole or in part on hearsay," and then establishes when and how the reliability and veracity of the hearsay declarant must be established. The problem presented by this case is not that the affidavit was based on hearsay, or that the affidavit did not establish the reliability or veracity of the hearsay declarant, but rather is that Officer Baugh *failed to disclose* to the judge that the affidavit was based on hearsay. The failure to disclose, as will be fully explained later in this opinion, presents a *Franks* problem, not a Rule 13.1(b) problem. Hence we conclude that the dissenting opinion's reliance on Rule 13.1(b) and its conclusion that Rule 13.1(b) will be "watered down" is misplaced.

## II. False Material, Misleading Information, or Omissions in the Affidavit

█ Instead of Rule 13.1(b), the trial court should have applied *Franks v. Delaware*, 438 U.S. 154 (1978), which contains the proper analysis for determining whether false material, misleading information, or omissions render an affidavit in support of a search warrant fatally defective.[1] In *Franks*, two police officers signed an affidavit that declared, in material part, that:

> 15. On Tuesday, 3/9/76, *your affiant* contacted Mr. James Williams and Mr. Wesley Lucas of the Delaware Youth Center where Jerome Franks is employed and did have *personal conversation* with both these people.

> 16. On Tuesday, 3/9/76, Mr. James Williams *revealed to your affiant* that the normal dress of Jerome Franks does consist of a white knit thermal undershirt and a brown leather jacket.

---

[1] Although the trial court did not cite *Franks*, it nevertheless made the necessary factual finding required by *Franks*.

17. On Tuesday, 3/9/76, Mr. Wesley Lucas revealed *to your affiant* that in addition to the thermal undershirt and jacket, Jerome Franks often wears a dark green knit hat.

*Id.* (Emphasis added.) After the search warrant was issued and executed, it was discovered that the affiant officers had not personally interviewed the two witnesses mentioned above, and that the descriptions given by the witnesses were "somewhat different" from what was recited in the affidavit. *Id.* The trial court refused to grant a suppression hearing on this basis. *Id.* On appeal, the United States Supreme Court held that:

> where the defendant makes a *substantial preliminary showing* that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that *a hearing be held* at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a *preponderance of the evidence*, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, *the search warrant must be voided* and the fruits of the search excluded to the same extent *as if probable cause was lacking on the face of the affidavit.*

*Id.* (Emphasis added.) Upon remand, the Delaware Supreme Court excised the false information from the affidavit, and determined that the remaining portions were sufficient to establish probable cause such that it was not even necessary to hold a suppression hearing on the issue. *Franks v. State*, 398 A.2d 783 (Del. 1979).

██ ██ Since *Franks* was handed down in 1978, courts have consistently held that a warrant should be invalidated if a defendant shows by a preponderance of evidence: 1) that the affiant made a false statement knowingly and intentionally, or with reckless disregard for the truth, *and* 2) that with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause. *United States v. Clapp*, 46 F.3d 795 (8th Cir. 1995); *Pyle v. State,* 314 Ark. 165, 862 S.W.2d 823 (1993). Similarly, when an officer omits facts from an affidavit, the evidence will be suppressed if the defendant establishes by a prepon-

derance of the evidence that: 1) the officer omitted facts knowingly and intentionally, or with reckless disregard, *and* 2) the affidavit, if supplemented with the omitted information, is insufficient to establish probable cause. *United States v. Buchanan*, 167 F.3d 1207 (8ᵗʰ Cir. 1999); *Pyle, supra.*

This is not the first time that we have been faced with an affidavit where the affiant officer failed to disclose to the issuing judge that part of the information contained therein was obtained from a different officer. In *Pyle, supra*, the affiant officer asserted that he identified Mr. Pyle talking to an intermediary in a controlled drug buy when in actuality the identification was made by another officer who did not sign the warrant. *Pyle, supra*. We held that this error did not constitute a *Franks* violation. *Id.*

As in *Pyle*, we conclude that Mr. Rufus has not satisfied his burden of establishing a *Franks* violation in this case. First, in light of the trial court's findings that there was no "purposeful wrongdoing on the part of the officer but that it was merely an ministerial error, oversight, in signing the affidavit for a search warrant," we cannot say that Officer Baugh misled the judge knowingly and intentionally, or with reckless disregard. Furthermore, Officer Baugh's conduct was less egregious than that in *Franks, supra*, where the officers wrote the affidavit in the first person and affirmatively stated on three occasions that they had personally spoken to the witnesses, when in fact, they had not. In contrast, Officer Baugh wrote the affidavit in the third person and, more importantly, never affirmatively stated that he had any personal knowledge of the facts contained in the affidavit. In fact, his affidavit begins with the declaration that he "has reason to believe" that the information contained therein is true. Hence, we conclude that Mr. Rufus has failed to satisfy the first prong of the *Franks* test.

As to the second prong of *Franks*, we must decide whether the affidavit, if supplemented with the omitted information, would not have supported a finding of probable cause. Again, we must answer this question in the negative in light of the court's finding that it "wouldn't have had any problem in sustaining and upholding the search warrant had the officer applying

for the warrant indicated the source and nature of his information or had the officer that provided the information jointly signed the search warrant." Likewise, the court also found that the affidavit "certainly would have been valid" if Officer Andrews had signed and acknowledged the affidavit. Simply put, because the trial court would have upheld the search warrant even if the affidavit had disclosed that the information came from Officer Andrews instead of Officer Baugh, we cannot say that the omission rendered the affidavit fatally defective under *Franks*. Accordingly, we reverse the order of suppression and remand the case for further proceedings consistent with this opinion.

The dissenting opinion contends that it is improper for us to reach the *Franks* analysis because it was not raised below. We disagree. Although neither of the parties nor the trial court specifically cited *Franks*, their arguments were based on the *Franks* holding. For instance, Mr. Rufus's argument to the trial court was that the search warrant was fatally defective because Officer Baugh failed to disclose that the affidavit was based on hearsay from Officer Andrews. Although Mr. Rufus and the trial court labeled this a Rule 13.1(b) argument, it is, as explained above, a *Franks* argument. Likewise, the State argued that the court should overlook the error because it was a good-faith mistake that did not affect the probable-cause determination. In making this argument, the State incorrectly referred to *Leon* instead of *Franks*. We cannot honestly say that the parties failed to develop the *Franks* argument below simply because they referred to it by the wrong name. Furthermore, we emphasize that the trial court rendered rulings on the two-prongs of the *Franks* analysis. Because the *Franks* arguments were made below and the trial court rendered the necessary rulings, we disagree with the dissenting opinion's assertion that this is a "straw-man issue."

We also disagree with the dissenting opinion's contention that this holding will "water down" Rule 13.1(b) and allow police officers henceforth to fail to disclose to a judge that the affidavit includes hearsay from another officer. The crucial facts of this case, which the dissenting opinion overlooks, are that the trial court found that Officer Baugh's mistake was a good-faith, "ministerial" error, and that the error did not affect the probable-cause

determination. Based on the unique facts presented by this case, we cannot say that these findings are clearly erroneous or against the preponderance of the evidence. However, in future cases it is very possible that a trial court could find that the nondisclosure occurred in bad-faith and was material to the determination of probable cause. Under such circumstances, the seized evidence would have to be suppressed. Faced with such a consequence, officers in future cases would be remiss if they "knowingly and intentionally, or with reckless disregard" failed to disclose that the affidavit included hearsay from another officer.

The dissenting opinion refers to the "objective standard" used in *Leon* and asserts, without citation to authority, that "[d]irect knowledge or disclosure of hearsay is essential to the validity of a warrant." In making this assertion, the dissenting opinion claims that we have missed the real issue in this case.

We only need to turn to the facts of *Franks* to realize that this argument goes astray. In so few cases are we able to rely on a United States Supreme Court opinion that is directly on point. As in this case, the police officers in *Franks* failed to disclose that the affidavit included hearsay from another officer. As mentioned above, the facts of *Franks* were more egregious than this case because there the officers affirmatively declared that the information was based on their personal knowledge, whereas in this case the officers made no such affirmative misrepresentation and instead merely failed to disclose that fact to the judge. But what is more important about *Franks*, which the dissenting opinion has lost sight of, is that the Supreme Court gave us the exact legal analysis to use when officers make such an error. Different from the *Leon* analysis, the *Franks* analysis includes both a good-faith or intention prong *and* a materiality prong. As to the first prong, the dissenting opinion refers to the *Leon* "objective standard" and contends that a mere negligent nondisclosure is enough to render the warrant invalid. The *Franks* analysis, however, does not employ a negligence standard. Instead, the nondisclosure must be knowing, intentional, or reckless. Furthermore, the dissenting opinion has not even mention the materiality requirement, which is essential to a *Franks* analysis. In sum, the dissenting opinion has

run astray because it relies upon Rule 13.1(b) and *Leon*, while ignoring the clear and applicable test established in *Franks*.

### III. Relationship between Franks and Leon

Finally, we realize that there is some confusion as to the difference between the *Franks* analysis and the *Leon* good-faith exception. In particular, upon the State's requests the trial court considered the *Leon* good-faith exception instead of the *Franks* analysis. Accordingly, we take this opportunity to attempt to dispel some of the confusion.

■ ■ In *Leon v. United States*, 468 U.S. 897 (1984), the District Court suppressed evidence because it disagreed with the magistrate's determination that there was sufficient probable cause to justify the issuance of a search warrant. On appeal, the United States Supreme Court held that evidence should not be suppressed when it was obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *Id*. The Court then explained that:

> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154 (1978). The exception *we recognize today* will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S., at 610–611 (Powell, J., concurring in part); *see Illinois v. Gates, supra*, at 263–264 (White, j., concurring in judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient - i.e., in failing to particularize the place to be searched or

> the things to be seized – that the executing officers cannot reasonably presume it to be valid.

*Id.* (Emphasis added.) Hence, a *Franks* analysis applies only when the *affidavit* is allegedly defective due to error on the part of the *police.* There the reviewing court must determine if the officer's conduct was so egregious and the error so material that the evidence should be suppressed. In contrast, the *Leon* analysis applies when the *search warrant* is allegedly defective due to an error on the part of the *magistrate.* Pursuant to *Leon*, the reviewing court must determine if the magistrate's error was so obvious that the officers could not in good faith have thought that the warrant was valid. *See* Wayne R. LaFave, Search and Seizure, §§ 1.3 & 4.4 (3rd ed. 1996). Because the case before us today involved the first situation, and not the latter, we conclude that the trial court should have applied *Franks* instead of *Leon.*

Reversed and remanded.

Brown, J., dissents.

Robert L. Brown, Justice, dissenting. For the first time in my memory, the majority has reversed the trial judge for a reason not developed before the him. The majority justifies this aberration by claiming that a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), must occur *even when not requested by the defendant.* That is not what the *Franks* decision says. It says a hearing is held at the defendant's request, after the defendant makes a substantial showing that a false statement was intentionally or recklessly made. The majority then holds that even though the appellant in this case did not request a *Franks* hearing, that is what he really meant to do. After raising *Franks* on its own, the majority then reverses because it finds no *Franks* violation occurred. This all smacks of raising a straw-man issue, knocking it down, and deciding the case on that basis.

I would proceed as did the appellant and the trial judge in the suppression hearing and decide this case based on Ark. R. Crim. P. 13.1(b). That rule says in part:

(a) A search warrant may be issued only by a judicial officer.

(b) The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based on whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained.

Here, that was not done. The affidavit was all hearsay and was based on what Officer Andrews observed. None of that was disclosed. And while I agree that a police officer's veracity and reliability need not be proved, the fact that an affidavit was totally hearsay must be disclosed.

The issue in this case is not whether Officer Baugh intentionally or purposefully misled the trial judge with his affidavit. The trial judge specifically found that Officer Baugh's actions were not "purposeful." The issue is the validity of an affidavit which fails to disclose the true source of the information and erroneously implies that Officer Baugh is that source. The trial judge correctly zeroed in on the real issue in this case. The majority has not.

Nor can I subscribe to the majority's conclusion that by Officer Baugh's saying he had "reason to believe" the facts attested to, this absolved him of revealing the source of his facts. Even had the prosecutor made the "reason to believe" argument, which he did not, it would have been wrong. Direct knowledge or disclosure of hearsay is essential to the validity of a warrant.

What the prosecutor did raise to the trial judge in passing was the case of *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court permitted a search to stand where police officers reasonably believed, *using an objective standard*, that the search war-

321

rant was properly issued. Though Officer Baugh may have believed he was doing nothing wrong by signing the affidavit, as the trial judge judge found, he still cannot pass the test of objective reasonableness required by *Leon*. Any experienced police officer would know that a person attesting to facts must have firsthand knowledge of those facts or disclose the hearsay.[1]

This is a case about cutting corners. It is about reversing a trial judge on an issue not raised to him. It is further a case about the respect due an affidavit and what we mean by sworn-to facts. Rule 13.1(b) requires an affidavit or recorded testimony under oath to support a search warrant. This opinion substantially waters down that requirement. Now, the hearsay of one police officer need not be disclosed by the attesting police officer. That should not be, as it flies in the face of the plain language of Rule 13.1(b). The trial judge properly nipped this kind of activity in the bud. I would affirm the suppression.

---

[1] I do not believe, as the majority concludes, that *Leon* is limited to defects in a search warrant caused by the magistrate. *Leon* is a lengthy opinion which sets forth multiple principles applicable to a properly issued search warrant. In its concluding paragraph, the Supreme Court said:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or *could not have harbored an objectively reasonable belief in the existence of probable cause.*

*Leon*, 468 U.S. at 926. (Emphasis added.) An analysis under *Leon* looks at both the conduct of the magistrate and the police officers.