STATE of Arkansas *v.* Jerry Dean HOWARD

CR 99-989                                           19 S.W.3d 4

Supreme Court of Arkansas
Opinion delivered June 15, 2000

*Alan David Epley*, Judge;

*Stevan E. Vowell*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

L AVENSKI R. SMITH, Justice. The State filed this interlocutory appeal from the Carroll County Circuit Court's pretrial order suppressing evidence of drug activity seized from Appellee Jerry Dean Howard's residence and property in rural Carroll County. The trial court found the search warrant invalid due to its inaccurate property description. The State contends the trial court erred as a matter of law due to the rural nature of the property. It contends that naming the owner of rural property is sufficiently particular under Arkansas law. The State appealed this case to the court of appeals, which certified it to this court pursuant to Arkansas Supreme Court Rule 1-2(d).

*Facts*

On the morning of May 31, 1998, Carroll County Sheriff Deputy Greg Lester prepared a search warrant with a supporting affidavit. Lester also signed the affidavit for the search warrant. Deputy Lester then presented them to Municipal Court Judge Kent Coxsey, who signed the search warrant based on the representations made under oath by Lester and in the affidavit. The affidavit and warrant both described the property to be searched as follows:

> The residence located at Route #2 on County Road #517, Berryville, AR, a one story, off-white single family dwelling located on the northeast side of County Road #517, outbuildings located on this same property, the pond and surrounding area (suspected to be commonly owned by Jimmy and Jerry Howard), and vehicles located on this same property, currently occupied by Jerry Howard, Venus Howard, Sue Howard, and Cody Howard.

Thereafter, Lester, Officer Marr, and other officers from the Carroll County Sheriff's Department executed the warrant on Jerry's residence and property and on his brother's residence and property in Carroll County, with the search turning up evidence of methamphetamine manufacturing and other drug activity. Police arrested and the prosecutor charged Jerry, his brother Jimmy, who also lived in a house on the same county road, Brenda Kay Proctor, Susan Greer Howard, Steve Orion Howard, and Cody Howard with several drug-related crimes in an information filed on July 31, 1998.

Jerry's attorney filed a motion to suppress the evidence obtained in the search, and the trial court held hearings April 19, 1999, and May 10, 1999. During the hearings, the State presented testimony from Officers Lester and Marr and Judge Coxsey regarding the collection of evidence for and issuance of the affidavit and search warrant. The defense then presented testimony by Jerry and Steve Howard, and presented a videotape depicting the county road and property owned by Jerry.

According to the testimony of Officer Lester, the Carroll County Sheriff's Department first received a phone call from an informant approximately one year before this search was conducted regarding possible drug activity taking place at Jimmy's residence. Then, about three weeks before the search of the property, the

department began receiving "many" calls, approximately ten to fifteen calls, from informants telling the officers that the Howards, specifically Jimmy Howard, were manufacturing methamphetamine at their houses.

Officer Lester testified that a few days before the search was conducted, he questioned a confidential informant, informant #175, who had just been arrested. The informant indicated that she had just been to Jimmy's residence and that Jimmy was manufacturing methamphetamine. In order to test the veracity of this informant's information, Officer Lester questioned the informant about the location and layout of Jimmy's residence. Officer Lester testified that he had knowledge of the details of this residence because he had served an eviction notice, or notice of detainer, on Jimmy at his residence. Officer Lester testified that the details the informant provided indicated to him that she had, in fact, been at Jimmy's residence and that she had witnessed illegal activity taking place.

With regard to the warrant for Jerry's residence, Officer Lester testified that he supported the affidavit for the search warrant by references to the anonymous phone calls to the sheriff's department and by "inadvertent confidential informants" who had been to the residences. These "inadvertent" informants were people Officer Lester heard speaking on an audio tape regarding another drug suspect, and these informants spoke of the Howard residences "on the mountain." After an objection by the defense that this information was not in the affidavit for the warrant, Officer Lester then testified that he based the affidavit for the search of Jerry's residence on the information provide by confidential informant #175.

On cross-examination, Officer Lester indicated that he did not include a house number or residence address on the warrant for the search of Jerry's house because he did not think that there were any other houses on the county road besides Jerry's house and Jimmy's house. He indicated that another house, Sue Howard's sister's house, was close to the Howards' houses but was on a different county road. Officer Lester also indicated that he described Jerry's house as a one-story, off-white, single-family dwelling located on the northeast side of County Road #517. He also indicated that the pond was described as being part of Jimmy's property and Jerry's property, and that a large metal shed was actually across the county

road although that was not indicated in the affidavit. Officer Lester indicated that he included all of the outbuildings, in general, in both of the affidavits for warrants, and that the confidential informant who gave him his information did not indicate that there were any drugs or drug activity in the metal shed or building across the county road from the property.

Regarding the residents of the two houses searched, Officer Lester indicated that he knew that Jerry and his wife Susan, and their son Steve lived in Jerry's house, and that possibly Venus, Jerry's and Susan's daughter, did too. Officer Lester also indicated that he knew that Jimmy, Brenda, and Cody Howard lived in Jimmy's house, despite the fact that the affidavit and warrant indicated that Jerry, Venus, Susan, and Cody Howard lived in Jerry's house. Officer Lester testified that he did not look at any deeds to determine who actually owned the property, nor was he aware that these tracts of land were part of a subdivision. He indicated that the department believed that both Jimmy and Jerry jointly owned the property, but he also indicated that the wooden shed allegedly containing the methamphetamine lab was on Jimmy's property. Officer Lester testified that he was part of the team that searched Jimmy's house, not Jerry's house.

Judge Coxsey testified that he signed the search warrant based on the fact that he believed that there was probable cause to search the named premises. Officer Marr next testified, and he indicated that he was part of the team that searched Jerry's house and property. According to Officer Marr, the confidential informant told him and Officer Lester that she had seen the production of methamphetamines in a shed behind Jerry's house, as well as sales being made at both residences, and paraphernalia at both residences and in some outbuildings on the property approximately one week before she spoke to the officers. Officer Marr also testified concerning the information received from the confidential informant, and he stated that the informant indicated that the Howards were working back and forth between Jimmy's and Jerry's houses and property. Officer Marr indicated that the informant told him that a methamphetamine "cook" took place in the shed behind Jerry's house, and he acknowledged that that would have been a different story than the one the informant told Officer Lester that the "cook" had taken place in the shed behind Jimmy's house down by the pond. Officer Marr testified that they did not know who

owned the shed or pump house by the pond, and that they took no steps to investigate on whose land that building was located. Officer Marr also indicated that he could not provide a reason why Cody Howard was listed as a resident of both Jimmy's and Jerry's houses, and he acknowledged that Cody could not be a resident of both despite the fact that he was listed on both affidavits and warrants as such.

The defense presented testimony from Jerry, who noted that he owned both residences at issue in the warrants. He took over the bank loan on Jimmy's land to avoid foreclosure. Jerry testified about a videotape he made for the hearing which shows the county road from the beginning to his residence. Jerry testified that several houses are located along the road, including his and Jimmy's, as well as Gail Howard's house, a house owned by someone named Chris, Brandon Smith's house, Sam Dada's house, and James and Kay McNutt's house. Jerry also testified regarding the location of several outbuildings on his and Jimmy's property. Finally, Steve Howard testified regarding his presence at the search of Jerry's house.

After the hearing, the circuit judge issued his four-page decision filed June 21, 1998, finding that the search warrant did not sufficiently describe the property to be searched. As such, the court suppressed the evidence seized in the search of Jerry's and Jimmy's property. The State appealed this ruling on June 24, 1999, to the court of appeals, which certified it to this court for review.

### Standard of Review

In reviewing a case involving the suppression of evidence, we make an independent determination based upon the totality of the circumstances and reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *State v. Rufus*, 338 Ark. 305, 993 S.W.2d 490 (1999); *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999); *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998). In making this determination, we view the evidence in the light most favorable to the appellee. *Fouse, supra; Langford, supra.* The State urges this court to use a *de novo* standard of review, arguing that the trial judge applied the incorrect law when ruling that the search warrant was defective in its description of the property. The State cites *State v. Blevins*, 304 Ark. 388, 802 S.W.2d 465

(1991), for the proposition that where the matter to be decided is principally one of law, the Court may conduct a *de novo* review. The State argues that because the court did not find that the defendant's name alone on the search warrant for a rural piece of property was sufficient to identify the property, the court did not apply the law correctly, and this court must now review the case *de novo*. We decline the State's invitation. The *Blevins* court noted and applied the general standard of review in suppression cases recited above.

The only issue on appeal is whether the warrant sufficiently described the property to be searched. The trial court, in suppressing the search, held that the warrant was defective "for failure to particularly describe the place to be searched and the things to be seized as required by ARCrP 13.2 (b) (iii)." Specifically, the court noted that the deviation by the officers in this case was so great that there was substantial risk of the wrong property being searched. The court also found that the violation was "willful" because the officers could have easily obtained the correct description and location of the property.

In this interlocutory appeal, the State argues that the search warrant in this case was sufficient under constitutional requirements and under the Arkansas Rules of Criminal Procedure. The State contends that merely naming the owner of rural property is sufficiently particular to describe the property to be searched, and any descriptive errors in the warrant do not make the warrant invalid. The State avers that the attack on the warrant by Howard was a technical attack, and that this court disfavors those. Furthermore, the State argues that even if the totality-of-circumstances standard of review was appropriate, suppression was unwarranted. The State notes the police had no doubt about which property was to be searched because two of the officers conducting the search had been to this property previously, these officers had personally met with the drug informant before the warrant was issued, and Howard admitted that the property was his. Overall, the State argues that despite the fact that there were other houses on the same road as Howard's house and despite the fact that the warrant described Howard's house color incorrectly, as well as incorrectly described an outbuilding's location, the warrant was still valid because the possibility of misidentification was small.

■ ■ Although not addressed by the parties, we are compelled to address the application of Ark. R. App. P.—Crim. 3 to the instant appeal. Under this rule of appellate procedure, when the State files an interlocutory appeal from the trial court's grant of a defendant's motion to suppress evidence under Rule 16.2, an initial inquiry of this court must be whether the appeal involves the correct and uniform administration of justice and of the criminal law. *State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995); *State v. Gray*, 330 Ark. 364, 955 S.W.2d 502 (1997). Section (a) of the rule outlines the permissive grounds for State interlocutory appeals in criminal cases.[1] We have many time stated that the State's ability to appeal is not a matter of right but limited to those cases described under Rule 3. *Bowden v. State*, 326 Ark. 266, 931 S.W.2d 104 (1996); *State v. Stephenson*, 330 Ark. 594, 955 S.W.2d 518 (1997).

■ As we stated in *Stephenson, supra*:

We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. Rule 3(c). As a matter of practice, this court has only taken appeals "which are narrow in scope and involve the interpretation

---

[1] Rule 3(a) states in pertinent part:

(a) An interlocutory appeal on behalf of the state may be taken only from a pretrial order in a felony prosecution which *(1) grants a motion under Ark. R. Crim. P 16.2 to suppress seized evidence,* (2) suppresses a defendant's confession, or (3) grants a motion under Ark. Code Ann. § 16-42-101 (c) to allow evidence of the victim's prior sexual conduct. The prosecuting attorney shall file, within ten (10) days after the entering of the order, a notice of appeal together with a certificate that the appeal is not taken for the purposes of delay and that the order substantially prejudices the prosecution of the case. Further proceedings in the trial court shall be stayed pending determination of the appeal.

\*\*\*

(c) When a notice of appeal is filed pursuant to either subsection (a) or (b) of this rule, the clerk of the court in which the prosecution sought to be appealed took place shall immediately cause a transcript of the trial record to be made and transmitted to the attorney general, or delivered to the prosecuting attorney, to be by him delivered to the attorney general. If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that *the correct and uniform administration of the criminal law requires review* by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal. (Emphasis added.)

of law." *State v. Banks*, 322 Ark. 344, 345, 909 S.W.2d 634, 635 (1995). Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *State v. Harris*, 315 Ark. 595, 868 S.W.2d 488 (1994). Appeals are not allowed merely to demonstrate the fact that the trial court erred. *State v. Spear and Boyce*, 123 Ark. 449, 185 S.W. 788 (1916).

*Stephenson*, 330 Ark. at 595. Therefore, where the resolution of the State's attempted appeal turns on the facts of the case and would not require "interpretation of our criminal rules with widespread ramifications," acceptance of the State's appeal is not allowed under Rule 3. *Gray*, 330 Ark. at 368-B (supplemental opinion on denial of rehearing). An appeal that raises the issues of application, not interpretation, of a statutory provision does not involve the "correct and uniform administration" of justice or the criminal law. *Jones, supra*. The court in *State v. Hart*, 329 Ark. 582, 952 S.W.2d 138 (1997), explained this by noting that

> [w]here the trial court acts within its discretion after making an evidentiary decision based on the facts on hand or even a mixed question of law and fact, this court will not accept an appeal under Ark. R. Crim. P. 36.10 (now Ark. R. App. P.—Crim. 3(c).

*Hart*, 329 Ark. at 585-586 (citing *Harris*, 315 Ark. at 597; *State v. Mazur*, 312 Ark. 121, 123, 847 S.W.2d 715 (1993) (quoting *State v. Edwards*, 310 Ark. 516, 838 S.W.2d 356 (1992)).

█ We hold that in the instant case that the State has not demonstrated that the appeal of this matter involves the correct and uniform administration of the law and is, therefore, dismissed.

Dismissed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. We should review this case under Ark. R. App. P.—Crim. 3(a)(1). It is the type of case this court has reviewed in the past. *See State v. Tucker*, 268 Ark. 427, 597 S.W.2d 584 (1980); *State v. Cashion*, 260 Ark. 148, 539 S.W.2d 423 (1976). A significant issue in this appeal requires the interpretation of seven circumstances listed in Rule 16.2(e) as applied to *rural* property made the subject to a search warrant which

contains descriptive errors. That rule provides that a motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based was substantial. Because this court does not appear to have considered Rule 16(2)(e) in these circumstances involving a search of rural property, I would reach and decide the merits of this case.