STATE of Arkansas *v.* William Andrew HOOKS

CR 01-246                                              57 S.W.3d 130

Supreme Court of Arkansas
Opinion delivered September 20, 2001
[Petition for rehearing denied October 25, 2001.]

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellant.

One brief only.

W.H. "DUB" ARNOLD, Chief Justice. The State of Arkansas brings the instant appeal challenging the Saline County Circuit Court's decision that appellee, William Andrew Hooks, was entitled to a self-defense jury instruction on the use of nondeadly physical force although he fired a gun at an occupied vehicle. The State contends that our jurisdiction is authorized pursuant to Ark. R. App. P.—Crim. 3(c) (2001); we disagree and dismiss the appeal.

*Background*

A jury acquitted Hooks of one count of committing a terroristic act, two counts of first-degree terroristic threatening, and two counts of aggravated assault. Simultaneously, the jury convicted him of the following misdemeanor offenses: (1) fleeing by foot; (2) fleeing by vehicle; (3) driving while intoxicated; (4) first-degree criminal mischief; (5) disorderly conduct; (6) reckless driving; and (7) driving on a suspended license. The trial court sentenced him to a total of fifteen months in the county jail and fined him $2,450.00.

The event underlying Hooks's conviction took place on April 14, 2000. According to Hooks, he was driving three miles from his home down a "real rough" country road when he slowed his car and drove on the wrong side of the road to avoid potholes. At that point, another vehicle, driven by Andy Sanders, struck him. Although Sanders's account differs as to who caused the accident, he admits that he lost control of his truck after the impact and landed in a ditch. After Sanders regained control and drove on, Hooks followed him until Sanders's car died at the end of Delta Drive. Hooks then exited his car, purportedly to survey the damage caused by the collision.

Under appellee's account, Sanders's stepfather, Walter Martin, then appeared in another vehicle and blocked his exit. The men exchanged hostile words, and Hooks ultimately retrieved a shotgun from the right-front passenger seat of his car that he had used earlier in the day for turkey hunting. Hooks testified that he got the gun to scare Martin and Sanders and to persuade them to move their truck so that he could leave the scene. When Martin refused to move the truck and allegedly told Hooks that he "was not going anywhere," Hooks fired a shot at the front tire. Both Martin and Sanders were in the vehicle when Hooks fired the gun. Sanders then moved the truck. Hooks drove away but was later apprehended by police. Hooks acknowledged that Martin and Sanders were unarmed and that he "took matters into [his] own hands."

On the other hand, Sanders and Martin testified that Hooks was carrying a shotgun when he staggered to the driver's window of their car and held the gun to Martin's face and threatened to kill him. They also reported that Hooks appeared to be intoxicated, was verbally threatening, and struck Martin across the face. Hooks then backed away from the vehicle, aimed the gun towards the tire, and shot.

In light of the conflicting testimony, the State proffered AMCI 2d 705, a jury instruction concerning the use of *deadly* physical force in defense of a person. Appellee submitted AMCI 2d 704, addressing the use of physical force in self-defense. The State objected to Hooks's instruction on the basis that appellee employed deadly physical force when he discharged a gun at an occupied car. Further, the State reasoned that no rational basis existed for the trial court to instruct the jury that Hooks was justified in employing nondeadly force.

After reviewing both instructions "under the circumstances," the trial court disagreed and concluded that Hooks's instruction was the "better instruction." The court also noted that AMCI 2d 704 "more closely applies to the facts." Consequently, the trial court informed the jury that Hooks asserted a claim of self defense to the aggravated-assault and terroristic-act charges. Specifically, the court informed the jury that Hooks would not have been justified in using physical force upon another if he provoked the use of unlawful physical force or he was the initial aggressor.

*Jurisdiction*

■ On appeal, the State argues that the trial court's decision satisfies the jurisdictional requirements under Ark. R. App. P.— Crim. 3(c) (2001), because the asserted error prejudiced the State, and the correct and uniform administration of the criminal law requires our review. Essentially, the State maintains that the trial court erred as a matter of law by finding that an individual firing a gun at an occupied vehicle employed anything less than deadly physical force. Despite the State's characterization that this case presents an issue of law, the record reveals that the trial court's decision turned upon the specific facts of this case. We have long held that where the resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *See State v. Dawson*, 343 Ark. 683, 688-89, 38 S.W.3d 319, 322 (2001) (citing *State v. McCormack*, 343 Ark. 285, 34 S.W.3d 735 (2000); *State v. Guthrie*, 341 Ark. 624, 19 S.W.3d 10 (2000); and *State v. Howard*, 341 Ark. 640, 19 S.W.3d 4 (2000)). Accordingly, we dismiss the State's appeal.