2009 Ark. 154

**STATE of Arkansas, Appellant,**

v.

**Shane Patton STITES, Appellee.**

**No. CR 08–1186.**

Supreme Court of Arkansas.

March 19, 2009.

Dustin McDaniel, Att'y Gen., by: Vada Berger, Ass't Att'y Gen., Little Rock, for appellant.

Joel Price, Fort Smith, for appellant.

ANNABELLE CLINTON IMBER, Justice.

This interlocutory appeal by the State arises from an order entered by the Sebastian County Circuit Court granting Appellee Shane Patton Stites's motion to suppress evidence discovered inside a locked safe during the execution of a search warrant at Appellee's residence. For the reasons stated below, we reverse and remand.

According to testimony elicited at the suppression hearing, Detective Wayne Barnett of the Fort Smith Police Department received information from a confidential informant that Appellee was

involved in the use and sale of methamphetamine at his home. The informant agreed to cooperate with police by making a controlled buy from Appellee. When the informant went to Appellee's house, however, Appellee told him to leave and come back later. The informant reported to Detective Barnett that, while inside Appellee's |₂house, he saw a glass pipe with burnt residue, which is commonly used to smoke methamphetamine, and two small caliber handguns under the coffee table in the living room. Detective Barnett then obtained a search warrant to search Appellee's home for "drug paraphernalia, methamphetamine and firearms."

The police promptly executed the warrant and found twenty-one pieces of evidence, including a revolver, drugs, drug paraphernalia, and $435 in cash on Appellee's person. The second handgun mentioned by the informant was never found. During the search, the police discovered a locked safe inside a small closet in the entry hall by the front door and adjacent to the living room. The informant had not reported seeing a safe in the house, and the officers did not know there was a safe until it was discovered during the search. The safe was twelve-by-eighteen inches and large enough to contain drugs, drug paraphernalia and firearms. A locksmith was summoned to the scene to open the safe. Once the safe was opened, the officers discovered crystalline substance, methamphetamine, and a Honeywell lock box that contained a crystalline and vegetable residue.

Appellee was charged with possession of methamphetamine with intent to deliver, possession of marijuana with intent to deliver, possession of drug paraphernalia, simultaneous possession of drugs and firearms, and maintaining a premises for drug activities. He then filed a motion to suppress, asserting, among other things, that the evidence seized from the locked safe found inside his residence should be suppressed because neither the affidavit for the search warrant nor the warrant itself mentioned a safe, and thus, the search |₃of the safe exceeded the scope of the search authorized by the warrant. Detective Barnett testified during the suppression hearing that he thought the warrant to search the house authorized him to open the safe if it was capable of holding the items that were the subject of the search warrant; and, had he thought that he did not have authority to open the safe, he would have seized the safe and procured a second warrant to open it, albeit with the same information used to obtain the first one. The circuit court issued an order granting Appellee's motion to suppress the evidence discovered inside the locked safe.

The State filed this interlocutory appeal pursuant to Ark. R. App. P.-Crim. 3(a) (2008). Rule 3 provides in pertinent part:

(a) An interlocutory appeal on behalf of the state may be taken only from a pretrial order in a felony prosecution which (1) grants a motion under Ark. R.Crim. P 16.2 to suppress seized evidence, (2) suppresses a defendant's confession, or (3) grants a motion under Ark.Code Ann. § 16–42–101(c) to allow evidence of the victim's prior sexual conduct. The prosecuting attorney shall file, within ten (10) days after the entering of the order, a notice of appeal together with a certificate that the appeal is not taken for the purposes of delay and that the order substantially prejudices the prosecution of the case. Further proceedings in the trial court shall be stayed pending determination of the appeal.

. . .

(c) When a notice of appeal is filed pursuant to either subsection (a) or (b)

of this rule, the clerk of the court in which the prosecution sought to be appealed took place shall immediately cause a transcript of the trial record to be made and transmitted to the attorney general, or delivered to the prosecuting attorney, to be by him delivered to the attorney general. If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that the correct and uniform administration of the criminal law requires review by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

Ark. R. App. P.-Crim. 3(a) and (c) (2008). Pursuant to Ark. R. App. P.-Crim. 3(c), the Attorney General certified that he was satisfied that error had been committed to the prejudice of the State. The transcript of the trial was filed on October 8, 2008, within the sixty-day requirement of Rule 3(c).

Under Ark. R. App. P.-Crim. 3, when the State files an interlocutory appeal from the trial court's grant of a defendant's motion to suppress evidence under Rule 16.2, an initial inquiry by this court must be whether the appeal involves the correct and uniform administration of justice and of the criminal law. *State v. Howard*, 341 Ark. 640, 19 S.W.3d 4 (2000). Section (a) of the rule outlines the permissive grounds for State interlocutory appeals in criminal cases. *Id.* We have many times stated that the State's ability to appeal is not a matter of right but limited to those cases described under Rule 3. *Id.* We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *Id.* As a matter of practice, our court has only taken appeals that are narrow in

scope and involve the interpretation of law. *Id.* When an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *Id.* Appeals are not allowed merely to demonstrate the fact that the trial court erred. *Id.* Therefore, where the resolution of the State's attempted appeal turns on the facts of the case and would not require interpretation of our criminal rules with widespread ramifications, acceptance of the State's appeal is not allowed under Rule 3. *Id.* An appeal that raises the issue of application, not interpretation, of a statutory provision does not involve the correct and uniform administration of justice or the criminal law. *Id.* Where the trial court acts within its discretion after making an evidentiary decision based on the facts on hand or even a mixed question of law and fact, this court will not accept an appeal under Ark. R. App. P.-Crim. 3(c). *Id.*

The State argues that the issue to be decided is whether Ark. R.Crim. P. 13.3(d) authorizes officers to open a closed container, in this case a safe, during the execution of a search warrant when the container is capable of holding the items that are the subject of the warrant. Appellee, on the other hand, argues that this appeal involves only the application of Rule 13.3(d) to the particular and discrete facts in the instant case. He suggests that the State's appeal necessarily turns on whether the facts support the circuit court's finding that the search of the locked safe exceeded what was authorized by the warrant; that is, whether the circuit court acted within its discretion after making an evidentiary decision based on the facts.

Pursuant to Rule 13.3(d), the scope of a search shall be "only such as is authorized by the warrant and is reasonably

necessary to discover the persons or things specified therein." Ark. R.Crim. P. 13.3(d). In ruling on Appellee's motion to suppress, the circuit court ruled that the evidence found inside the safe during the execution of a search warrant at Appellee's residence should be suppressed because the safe was locked and the officers had an opportunity to take the safe out of the home and obtain a second search warrant. Thus, the issue on appeal is whether Rule 13.3(d) authorizes police officers to open a locked container during a lawful search of a premises when the officers believe that it is necessary to discover things specified in the warrant. In other words, the State's appeal presents a legal question regarding the scope of search warrants and whether the circuit court misinterpreted Rule 13.3(d) and thus applied a flawed interpretation of that rule to suppress the drugs seized from the safe. This issue involves the correct and uniform administration of the law, and we have jurisdiction pursuant to Ark. R. App. P.-Crim. 3 (2008).

▮▮▮ Rule 13.3(d) of the Arkansas Rules of Criminal Procedure provides as follows:

> The scope of search shall be only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein. Upon discovery of the persons or things so specified, the officer shall take possession or custody of them and search no further under authority of the warrant. If in the course of such search, the officer discovers things not specified in the warrant which he reasonably believes to be subject to seizure, he may also take possession of the things so discovered.

Ark. R.Crim. P. 13.3(d) (2008). We review issues of statutory construction de novo, as it is for this court to decide what a statute means. *Middleton v. Lockhart,* 344 Ark. 572, 43 S.W.3d 113 (2001). We construe court rules using the same means and canons of construction used to interpret statutes. *Jackson v. Sparks Reg'l Med. Ctr.,* 375 Ark. 533, 294 S.W.3d 1 (2009). First, the rule is to be construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Stanley v. Ligon,* 374 Ark. 6, 285 S.W.3d 649 (2008). There is no need to resort to rules of construction when the language is plain and unambiguous. *Id.*

The State's appeal presents an issue that has heretofore never been decided by this court: whether police officers can search a container during a lawful search of a premises when the officers believe that a search of the container is necessary to discover the things specified in the warrant. In the context of a warrantless search of an automobile, we have held that a search of containers found inside a vehicle was justified where probable cause justified the search of the vehicle and the containers could contain the suspected contraband. *McDaniel v. State,* 337 Ark. 431, 990 S.W.2d 515 (1999). In upholding the seizure of a safe discovered during the execution of a search warrant for stolen goods in a premises, the Arkansas Court of Appeals noted that "the safe was found while the officers were still conducting their search for the television and the television could have been concealed inside the safe." *Campbell v. State,* 27 Ark.App. 82, 87, 766 S.W.2d 940, 943 (1989). While a second warrant was obtained to open the safe in *Campbell,* the court of appeals did not decide whether the second warrant was necessary in order for the officers to conduct a lawful search of the safe.

Likewise, the United States Supreme Court has not directly addressed the scope of a warrant to search a premises. However, in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982),

a case involving the warrantless search of containers found inside a vehicle, the Supreme Court discussed the principles that govern the lawful search of containers:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.[Footnote omitted.] Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside.... When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trucks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.[Footnote omitted.]

*Id.* at 820–21, 822–23, 102 S.Ct. 2157.

The issue on appeal has, however, been addressed by the United States Eighth Circuit Court of Appeals. In *U.S. v. Wright*, 704 F.2d 420 (8th Cir.1983), the police found a locked safe not specified in the warrant during a search of defendant's home and forced the defendant to open it. Citing *United States v. Ross, supra,* the Eighth Circuit held that the warrant obtained by the police officers permitted them to search the safe. *Id.* Similarly, in *United States v. Johnson,* 709 F.2d 515 (8th Cir.1983), the police removed a floor safe during a search of Johnson's bedroom and later opened it at the police station without Johnson's consent. In addressing Johnson's argument that the police had no authority to remove and open the safe, the Eighth Circuit interpreted the Supreme Court's decision in *Ross* as holding in dicta that "A search warrant authorizing the search of defined premises also authorizes the search of containers found on that premises which reasonably might conceal items listed in the warrant." *United States v. Johnson,* 709 F.2d at 516. The *Johnson* court held that the police were authorized to open the safe under the warrant at the time of search, and they did not need a second warrant to complete the search of the safe at the police station. *Id.*

Appellee nonetheless suggests that the Arkansas Constitution gives citizens greater protection against unreasonable searches and seizures in their homes than it does when they drive on public roadways. While the search-and-seizure language of article 2, § 15 of the Arkansas Constitution is very similar to the words of the Fourth Amendment, our constitution, state statutes and criminal rules have clearly embraced a heightened privacy protection for citizens in their homes against unreasonable searches and seizures. *State v. Brown,* 356 Ark. 460, 156 S.W.3d 722 (2004). We recognize that we lack authority to extend the protections of the Fourth Amendment beyond the holdings of the United States Supreme Court, but we do have the authority to impose greater restrictions on police activities based upon our own state law. *Id.* In the *Brown* case, this court held that, although the Supreme Court has held that the Fourth Amendment does not require knowledge of the right to refuse consent as a prerequisite to a showing of voluntary consent, the failure of law enforcement officers to advise a defendant that he or she has the right to refuse consent to the search violates his or her rights as guaran-

teed by article 2, § 15 of the Arkansas Constitution. *State v. Brown, supra.*

Though it is clear that this court may deviate from federal precedent in providing greater protection against unreasonable searches and seizures, we only do so when such a deviation is justified. Our considerations in deciding whether to deviate from federal precedent were set forth in *State v. Brown:*

> Without question, a slavish following of federal precedent would render this court's opinions merely a mirror image of federal jurisprudence, which would carry with it a certain abrogation of our duty to interpret our own state constitution and follow our own state law. Yet, we admit to a concern about deviating too much from federal precedent based solely on our state constitution. A proper balance must be struck between the two.

*Id.* at 470, 156 S.W.3d at 729.

■ Unlike the *Brown* case, which involved a warrantless search of a home by the police, the officers in this case had a valid warrant to search the defendant's home. In other words, the officers were lawfully present on the premises. Thus, the facts here do not trigger the heightened protection against unlawful intrusion into a citizen's home that this court adopted in *State v. Brown, supra.* To require the police to obtain a warrant in order to search every closed container found during the course of a search would impose an unreasonable burden on the police and make it virtually impossible for them to execute a search warrant in many instances. We therefore hold that, when a legitimate search is under way, and when its purpose and its limits have been precisely defined, police officers need not obtain a second warrant to search containers found during a premises search.

■ A lawful search of a vehicle or a home does not, however, warrant a search of every part of the vehicle or home. Pursuant to Ark. R.Crim. P. 13.3(d), the scope of search shall be only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein. Rule 13.3(d). In *Ross,* the Supreme Court recognized this limitation even in the case of a warrantless search of a vehicle:

> The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

*Ross,* 456 at 824, 102 S.Ct. 2157. The Supreme Court elaborated further in *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), when it held that its prior rule governing the search of containers (a container could not be opened without a separate warrant) was outmoded. *Id.* The Court concluded, "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Id.* at 580, 111 S.Ct. 1982. Similarly, in *McDaniel v. State,* 337 Ark. 431, 990 S.W.2d 515, we stated that the scope of the search must be appropriate for the items to be found. In that case, because the officers smelled the odor of marijuana emanating from the truck,

the scope of the search could lawfully include containers within the vehicle that could contain marijuana. *Id.*

In the instant case, there is no dispute that the search for the items specified in the warrant was ongoing when the police opened the safe. At that time, they had found some of the items listed in the warrant. Moreover, the safe was large enough to contain drugs, drug paraphernalia and the second handgun described by the informant. The fact that the officers had already discovered some drugs and drug paraphernalia did not preclude them from continuing to search for drugs and drug paraphernalia and the second handgun. To |12hold otherwise would lead to an absurd result—the search would have to cease upon the initial discovery of any drugs or drug paraphernalia. It was therefore reasonably necessary for the police to search the safe. Thus, we conclude that the officers' search of the safe was within the scope of the search authorized by the warrant, and the circuit court erred in ruling that the safe could not be opened without a second warrant. In view of our holding on this point, we need not address the State's other arguments.

Reversed and remanded.